UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THOMAS L.,<br><br>      Plaintiff,<br><br>  v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Case No. 2:23-cv-00856-TLF<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

  Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges Administrative Law Judge Mary Kay Rauenzahn's (the ALJ) decision finding that plaintiff was not disabled. Dkt. 4, Complaint.

  Plaintiff filed their application on July 23, 2018. AR 15. After initially alleging an onset date of July 23, 2018, plaintiff amended the alleged onset date to July 23, 2018. After the Commissioner initially denied the application for benefits, plaintiff appealed; the ALJ conducted two hearings – the first, on January 11, 2022 (AR 34-71) and the second, on March 21, 2022 (AR 76-91). The ALJ issued a written decision on April 27, 2022, upholding the Commissioner's decision denying benefits, and finding plaintiff was

not disabled. AR 12-26. The Appeals Council denied review. AR 151-156. Plaintiff seeks review of the ALJ's decision.

The ALJ found, at Step Two of the Five-Step analysis, that plaintiff had the following severe impairments: "cervical sprain and degenerative disc disease, thoracic and lumbar spondylosis, asthma, diabetes mellitus, and obesity". AR 18. According to the description the ALJ gave regarding plaintiff's residual functional capacity (RFC), "[plaintiff] has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for approximately four hours and sit for approximately six hours, in an eight-hour workday, with normal breaks. He can occasionally push and pull with the bilateral upper extremities to the same weight limits. The claimant cannot climb ladders, ropes and scaffold, and can occasionally climb stairs and ramps. The claimant can occasionally stoop, crouch, kneel and balance, as defined by the Selective Characteristics of Occupations of the Dictionary of Occupational Titles (SCO-DOT). He cannot crawl or reach overhead with the bilateral upper extremities. The claimant should have only occasional, concentrated exposure to atmospheric conditions, and no concentrated exposure to vibrations, extreme heat and cold, moving mechanical parts, and high, exposed place hazards, as rated by the SCO-DOT." AR 21.

The ALJ determined that plaintiff did not have relevant past work, but at Step Five of the analysis, the ALJ found would be able to perform certain types of work -- light work, with some limitations. AR 25. The ALJ relied on evidence from a Vocational Expert, and found plaintiff would be able to perform, for example, occupations such as

merchandise marker, office helper, and mailroom clerk. AR 25. The ALJ found plaintiff was not disabled. AR 25-26.

DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

**1. Medical evidence.**

Plaintiff argues the ALJ harmfully erred in rejecting the opinions of Dr. Ardrielle Fry, M.D. First, plaintiff asserts the ALJ should not have discounted Dr. Fry's opinions based on a "fill in the blank" form. Second, plaintiff asserts that the opinions of Dr. Fry were fully supported by the record, and the ALJ erred by finding objective evidence did not support Dr. Fry's opinions. Third, plaintiff argues the ALJ erred by finding Dr. Fry's opinions were inconsistent with plaintiff's activity level. Dkt. 9, Plaintiff's Opening Brief, at 5-15.

Defendant contends the plaintiff's activities were inconsistent with the level of pain and physical restrictions that plaintiff testified he experienced due to back conditions. Dkt. 16 at 5-7, citing *Smartt v. Kijakazi,* 53 F.4th 489, 499 (9th Cir. 2022).

Dr. Fry opined, in answer to a questionnaire dated November 3, 2021, that plaintiff would "be unable to perform a job wherein he was required to stand and/or walk for 6 hours out of an 8-hour day, 5 days per week, 50 weeks per year because his back pain would flare to the point where he would need to lie down throughout the day." AR 1400. Dr. Fry also answered "yes" to the question of whether plaintiff "would be unable to perform a job wherein he was required to sit or alternate at will between sitting and standing for 6 hours out of an 8-hour day, 5 days per week, 50 weeks per year because his back pain would flare to the point where he would need to lie down throughout the day." AR 1400. Dr. Fry had been plaintiff's treating physician starting in May 2021, for his back conditions. AR 1449-1498.

Under the 2017 regulations, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

In *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), the Court found that "the requirement that ALJ's provide 'specific and legitimate reasons'[1] for rejecting a treating

---

[1] *See Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir. 1983) (describing the standard of "specific and legitimate reasons").

4

or examining doctor's opinion…is incompatible with the revised regulations" because requiring ALJ's to give a "more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources." *Id.* at 792. Under these regulations,

> an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

*Id.*

In this case, the plaintiff's statements about being able to attend professional soccer games that required about 6 hours of alternating between sitting, standing, and walking, and plaintiff's ability to maintain a marijuana garden to give himself a renewable plant supply, constitute substantial evidence to support the ALJ's reasoning for rejecting Dr. Fry's assessment. AR 23. A person with severe back pain would have extraordinary difficulty undertaking such activities at all, let alone regularly. *See, generally, Tidwell v. Apfel,* 161 F. 3d 599, 601 (9th Cir. 1999) (plaintiff's testimony about symptoms and limitations was inconsistent with the level of activity she reported of heavy chores required to maintain her home).

Because the ALJ had at least one legally sufficient reason, supported by substantial evidence, for discounting Dr. Fry's opinions, the Court will decline to review plaintiff's other arguments because any error with respect to other reasons would be harmless. *Carmickle v. Commissioner, Social Sec. Admin.,* 533 F.3d 1155, 1163 (9th Cir. 2008).

**2. Plaintiff's statements regarding symptoms and limitations**

Plaintiff argues the ALJ committed harmful error by finding the plaintiff's statements were inconsistent with medical records that showed his conditions improved with treatment. Dkt. 9 at 9-15. In the Reply, plaintiff contends that although some improvement happened, it was uneven at best and was not sustained over time. Dkt. 17 at 5-7.

The defendant asserts that physical examinations did not support plaintiff's alleged symptoms and limitations. Dkt. 16, at 9-11. And defendant argues that even if plaintiff's symptoms and limitations changed, sometimes for the better and sometimes for the worse, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability". Dkt. 16, at 12, *quoting, Wellington v. Berryhill,* 878 F.3d 867, 876 (9th Cir. 2017). The defendant asserts that plaintiff pursued treatment and the record demonstrates improved symptoms and reduced limitations. Dkt. 16, at 11-12. Defendant also argues that plaintiff was able to participate in activities that required more stamina and ability to stand, walk, and sit, than plaintiff testified to. Dkt. 16, at 12-13.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).  In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear, and convincing

1   reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v.*
2   *Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).
3       An ALJ may discount a claimant's testimony based on daily activities that either
4   contradict their testimony or that meet the threshold for transferable work skills. *Orn v.*
5   *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).
6       "Contradiction with the medical record is a sufficient basis for rejecting the claimant's
7   subjective testimony."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161
8   (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an
9   ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of
10  objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v.*
11  *Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th
12  Cir. 1995) (applying rule to subjective complaints other than pain). Treatment records
13  cannot be cherry-picked; the ALJ must consider a particular record of treatment in light
14  of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.
15      Plaintiff testified that he has pain in his thoracic spine, and lumbar spine. AR 42-43.
16  He stated that he would not be able to sit for longer than three hours at a time, and then
17  he would need to lay down for the rest of the day. AR 43. Standing up, and sitting up,
18  causes increased plain, and after three hours of even alternating between standing and
19  sitting, he needs to lay down or he would fall because his legs would become numb,
20  and he loses any control over his legs from the hip to the knee. AR 44.
21      He stated that he was able to walk about three blocks. AR 46. And he acknowledged
22  that he would attend professional soccer matches in Seattle, most recently seven of
23  them in a season, and that activity would require driving, walking, standing, and sitting

over several hours. Yet he also stated that attending a professional soccer match was the absolute maximum event he could handle and after attending a match, he would be "done". AR 46, 48-52. He stated the total amount of time that he would be active in conjunction with attending each game would be about five or six hours. AR 50, 88-89; see also, AR 1678 (plaintiff states to physical therapist on 11-17-2021 that he was able to stand for an entire soccer game), AR 1744 (plaintiff states to physical therapist that he over did by attending a Sounders game, and gardening).

Plaintiff also stated he has a garden, and he is allowed to cultivate up to 15 marijuana plants, grown so that he can produce his own cannabis. AR 52, 58, 60, 1189, 1996. He drives to visit friends, works out for aquatic therapy in a pool, and takes care of his marijuana garden – which includes watering, giving the plants nutrients, and lighting. AR 52-53, 66.

With respect to treatment, plaintiff stated that he received injections about three times per year with steroids; this treatment helped but did not provide total relief from pain. AR 57-58. He stated that he would live with a level six or seven (out of 10) pain every day and that was when he would go to his doctor for a steroid injection. *Id.* He indicated that after an injection it would take about three weeks for the pain to recede. AR 56. He also took cannabis, Tizanidine, and Albuterol, and these medications caused him to experience the main side effect of drowsiness. AR 54. He did not want to take opioid medications because they caused him to be overly sleepy all the time – and it required constant medication because if he stopped taking opiates, he would become very ill. AR 54.

As discussed above, the plaintiff's statements about being able to attend professional soccer games that required about five or six hours of alternating between sitting, standing, and walking, and plaintiff's ability to drive and visit friends, participate in aquatic therapy, and maintain a marijuana garden to give himself a renewable plant supply, supports the ALJ's reasoning for deciding plaintiff's testimony lacked credibility regarding the severity of symptoms and limitations. AR 22, 24. *Smartt v. Kijakazi,* 53 F.4th 489, 499 (9th Cir. 2022).  The Court should avoid second-guessing the ALJ's decision reasonably interpreting issues with plaintiff's testimony, with respect to comparing the plaintiff's statements about symptoms and limitations relating to pain -- with the evidence of what plaintiff is able to do -- functioning in activities of their daily life. *Id.* at 500.

Because the ALJ had at least one legally sufficient clear and convincing reason, supported by substantial evidence, for discounting plaintiff's statements about his symptoms and limitations, the Court declines to review plaintiff's other arguments because any error with respect to other reasons would be harmless. *Carmickle v. Commissioner, Social Sec. Admin.,* 533 F.3d 1155, 1163 (9th Cir. 2008).

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ properly determined plaintiff to be not disabled. The ALJ's decision is therefore affirmed.

Dated this 2nd date of April, 2024

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge